UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Case No. 3:19-CR-102 JD |
| DONTA D. BRIDGES | |

**OPINION AND ORDER**

On January 11, 2022, the Government filed a "Notice to Include Evidence in Relation to Federal Rule of Criminal Procedure 404(b) and Supplemental Expert Notice as to Joseph Focosi." (DE 42.) The Government represented in its notice that it had "copious text messages" from Bridges and intended to introduce at trial text messages between Bridges and the sources of information on dates charged in the indictment, as well as text messages from other dates. (*Id.* at 3–5.) The Government initially filed the complete cell phone extraction from Bridges' cell phone, totaling 457 pages. (DE 42; 46-1.) The Court advised the Government to provide the Court with only the portions of Bridges' cell phone records it planned to introduce at trial and explain why those texts were admissible.[1] (DE 48; DE 55; DE 77.) On October 11, 2022, the Government filed the texts it planned to introduce as well as an explanation as to why the texts were admissible. (DE 84; DE 86.) On October 17, 2022, the Defendant filed a response arguing that certain texts were inadmissible under Rule 404(b). (DE 96.)

---

[1] The Court notes that the Government's initial redacted filing included a picture of a 9 mm Ruger handgun. (DE 50-1 at 223, 457; DE 42.) Pictures of handguns outside of the Smith & Wesson alleged in the superseding indictment are inadmissible. Such pictures appear to have little, if any, probative value. And given the testimony from the confidential informant regarding the Smith & Wesson, any potential probative value that such a picture would have would largely be cumulative. Moreover, any probative value is substantially outweighed by a danger of unfair prejudice as such evidence, without more, is designed merely to suggest propensity. Accordingly, such pictures are inadmissible under Rule 403.

The texts in question are each identified by a given number, as well as the exhibit in which they appear. (DE 86.) Defendant's response objects to certain ranges of the texts. For example, the Defendant objects to text number 73 through text number 89. (DE 96 at 3.) For ease of analysis, the Court will consider the admissibility as to each of the identified ranges of texts. The Court notes that the analysis in this order does not address the foundation that the Government will need to lay in order to introduce the texts. Meaning, the Government is still required to first demonstrate that these texts involve communications by Bridges. *United States v. Brewer*, 915 F.3d 408, 416 (7th Cir. 2019) ("A party seeking to admit evidence must first establish a foundation for its authenticity.").[2]

**A.      Admissibility of Text Messages**

*(1) Messages 3635–3642, 3651–3672, 3680–3683, 3699, 3701–3702, 3705–3706, 3716–3720, 3745–3771, 3805, 3807–3808:*

This text conversation appears to be discussing the sale of drugs by Bridges to another individual, "Kris," on September 4, 2019, and in the early morning hours of September 5, 2019. The buyer appears to have purchased a variety of speakers, headphones, and other goods for Bridges on the afternoon of September 4th, met with Bridges, and then, on the night of September 4th, complained about how Bridges "cut" something improperly and asked if he could be "hook[ed] up with a lil more." At which point, in the early morning hours of September 5th,

---

[2] The Court notes that many (if not all) of the texts do not constitute hearsay, either because they are statements by a party opponent, the texts are questions, or because they contextualize the statements by Bridges. *See* Fed. R. Evid 801(d)(2)(A) ("[A] statement that is offered against an opposing party . . . and was made by the party in an individual or representative capacity" is not hearsay.); *United States v. Love*, 706 F.3d 832, 840 (7th Cir. 2013) ("[Q]uestions are not statements and therefore are not hearsay."); *United States v. Gaytan*, 649 F.3d 573, 579 (7th Cir. 2011) ("[O]ut-of-court statements are not hearsay if they are offered not for the truth but to put the defendant's statements in context or to make what he said and did in reaction to the informant's statements intelligible to the jury."). However, because neither party has raised any specific concerns about whether particular texts constitute hearsay, the Court does not analyze any individual texts for hearsay issues.

2

the individual then met Bridges again at Bridges' home. (DE 86 1–10.) Defendant objects to this range of texts as not being relevant to any issues at trial nor probative of any exceptions indicated in Rule 404(b)(2). The Court disagrees. A reasonable interpretation from these texts is that Bridges dealt drugs to "Kris" in exchange for a variety of goods and then met with "Kris" again after he complained about the quantity or quality of the drugs he received.[3] The Seventh Circuit has explained that "other drug transactions [may be] relevant for purposes other than propensity, such as knowledge, intent, and lack of mistake." *United States v. Conner*, 583 F.3d 1011, 1021–22 (7th Cir. 2009). For example, in *United States v. Harris*, 536 F.3d 798, 810 (7th Cir. 2008), the Defendant had been charged with distributing cocaine, possessing crack cocaine with intent to distribute, and being a felon in possession of a firearm. At the defendant's trial, witnesses testified about selling the defendant cocaine and buying cocaine from the defendant on multiple occasions in the two years preceding the defendant's arrest. *Id.* at 805. On appeal, the defendant argued that the district court abused its discretion by admitting improper propensity evidence. *Id.* at 810. The Seventh Circuit found that the evidence of prior drug transactions was relevant to prove the defendant's intent, motive to possess a gun, and opportunity to make the controlled sales. *Id.*

Evidence of Bridges' transactions with Kris are relevant for the same reasons as in *Harris*. First, as the Government noted at the Final Pretrial Conference, the evidence that Bridges was selling drugs on the same day as the controlled buy helps to show his opportunity to make the controlled sales. The Government noted at the Final Pretrial Conference that the controlled

---

[3] The Court notes that some of the texts might potentially include coded language. For example, it's unclear to the Court whether the texts where the buyer appears to be going to purchase "headphones" and "speakers" for Bridges is, in fact, buying Bridges those objects or if the texts are simply codes or slang standing in for something else. (DE 86 at 5.) If the Government's theory is that these texts are codes, then the Government must, prior to their admission, have a witness testify as to their meaning.

3

buy recordings it intends on presenting do not clearly show drugs changing hands. This text thread appears to show Bridges telling a customer, "Kris," to come to his home to pick up drugs after the customer was unhappy about the drugs he received earlier that day. That Bridges had drugs on him the very same day as the charged offense of distributing heroin in Count One, and was selling those drugs, makes it more likely that Bridges had some inventory of drugs from which he could deal. Therefore, the texts showing that Bridges was dealing controlled substances the very same day help establish that Bridges had the opportunity to make the controlled sale. *See Harris*, 536 F.3d at 810 ("[T]he evidence that Harris purchased drugs from Powers was admissible to establish that Harris had the opportunity to make the controlled sales by tracing a potential supplier of the drugs sold to Haynes.").

The evidence of other drug transactions could also go towards motive. Like in *Harris*, Bridges is accused of being a felon in possession of a firearm. (DE 68 at 6.) Furthermore, Bridges is also charged with possessing a firearm in furtherance of a drug trafficking crime. (*Id.* at 5.) The Seventh Circuit has "approved of admitting 'other' act evidence of drug dealing to prove that [a] defendant had a motive to possess a firearm." *United States v. Pulliam*, 973 F.3d 775, 785 (7th Cir. 2020) (citing *United States v. Schmitt*, 770 F.3d 524, 533–535 (7th Cir. 2014). In *Pulliam*, the Seventh Circuit noted that the probative value of such evidence toward motive depended on whether the evidence was strong or weak evidence of drug dealing activity. *See* 973 F.3d at 785 (upholding the admission of drug dealing evidence even though "the specific motive evidence [there] — testimony about cash found on [Defendant's] person — [was] not strong evidence of drug-dealing activity, and therefore, even more tenuous evidence of motive"). Here, unlike *Pulliam*, the texts appear to be highly probative of drug-dealing, and therefore even

stronger evidence of motive than the evidence which the Seventh Circuit upheld the admission of in *Pulliam*.

The evidence of Bridges' drug transactions with Kris on September 4th and September 5th also goes toward Bridges' intent. In Count Two, Bridges is charged with attempting to distribute and possess with intent to distribute on September 25, 2019, which is a specific intent crime. *United States v. Morgan*, 929 F.3d 411, 428 (7th Cir. 2019) ("Our Circuit holds that possession with intent to distribute is a specific intent crime."); *United States v. Cote*, 504 F.3d 682, 687 (7th Cir. 2007) ("For an attempt conviction, the Government [is] required to prove that [a defendant] acted with the specific intent to commit the underlying crime and that he took a substantial step towards completion of the offense."). The Seventh Circuit has been clear that intent is a permissible non-propensity purpose. *United States v. Gomez*, 763 F.3d 845, 858 (7th Cir. 2014) ("Evidence [which] is offered to prove intent [is] a permissible non-propensity purpose."). The evidence is quite similar to that presented in *Morgan*, where the Seventh Circuit held that the admission of testimony from witnesses who claimed they purchased drugs from the defendant in the months prior to his arrest "was clearly relevant for the non-propensity purpose of proving the required intent." *Morgan*, 929 F.3d at 427. Here, the evidence appears even more probative of intent than *Morgan*, given that the transactions appear occurred about three weeks before the charged conduct in Count Two, rather than multiple months as was the case in *Morgan*.

Given that these texts appear relevant towards intent, motive, and opportunity, the Court finds that they do not run afoul of Rule 404(b). Furthermore, since the evidence appears to have probative value towards motive, intent, and opportunity, the Court finds that the evidence is not prohibited under Rule 403.

*(2) Messages 3791–3797, 3801–3804:*

These messages between Bridges and the Government's confidential source appear to be setting up the charged controlled buy on September 4, 2019. Defendant objects to these, asserting that they are "not relevant to any issues at trial or probative of any exceptions indicated in 404(b)(2)." (DE 96 at 1.) The Court disagrees. That Bridges was texting with the confidential source setting up the meeting the same day as the alleged distribution is directly relevant to the charge in Count One. Given that these texts appear highly probative, helping to prove that Bridges met with the confidential source on September 4th, these texts do not run afoul of Rule 403 or Rule 404(b).

*(3) Messages 3643–3650:*

These messages between Bridges and another individual names "Rodge" appear to be arranging a potential meet up. The Government states that these texts should be admitted because "any test messages related to drugs on [September 4, 2019] are direct evidence of the defendant's delivery of the controlled substances." (DE 84 at 2.) However, it is unclear from the texts what the purpose of this meeting was for. Furthermore, there does not appear to be any mention of drugs or any indication that Bridges and Rodge ever met. Therefore, the Court finds that this evidence does not have any probative weight. *See New Jersey v. T.L.O.*, 469 U.S. 325 (1985) (explaining that relevancy is determined by whether evidence has "any tendency" to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence); Fed. R. Evid. 401 (providing the rule for relevance). Accordingly, because these texts do not appear to have any probative value, the Court finds that messages 3643–3650 are irrelevant under Federal Rule of Evidence 401 and therefore inadmissible.

*(4) Messages 3684, 3691, 3692, 3700, 3703–3704, 3707–3715, 3721–3741*:

These messages include a conversation in which an unnamed recipient expresses being "depressed" to Bridges. Defendant argues that these texts do not appear to be relevant. The Court agrees. It is unclear who the recipient is, what she is depressed about, or why these texts are relevant to any issue in this case. It appears that some of the texts indicate that the individual met with Bridges earlier in the day on September 4th, prior to expressing that she was depressed. (DE 86 at 4–5.) It also appears that the individual texted Bridges that she wanted him to front her "the rest." (*Id.* at 5.) However, Bridges did not respond directly to that text and it is unclear whether this was referring to a drug transaction. Additionally, even if it was, these texts occurred on September 4, 2019, and therefore are cumulative to the texts between Bridges and Kris. Accordingly, the Court finds that these are inadmissible under Rule 401 and Rule 403.

*(5) Messages 1, 28–30, 47, and 358–361:*

In these messages, Bridges demands money from someone named "R Lil" using inflammatory and hostile language. Defendant argues that these messages run afoul of Rule 404(b) and Rule 403. (DE 96 at 2.) The Court agrees. Even though the Government argues that these text messages are "admissible as direct evidence of the delivery of controlled substances on" November 1, 2019 (DE 84 at 2–3), it is unclear from the texts what "R Lil" owed Bridges money for. It could have been for a car, a loan, or a purchase of some other lawful good. Rather than being "direct evidence," these texts appear to be relevant primarily for a propensity purpose: showing Bridges is the type of man who would shake down others for money, and therefore he's the type of person who would distribute drugs. Furthermore, these texts include highly inflammatory language, such as the "n-word," making them even more prejudicial. Given that it

7

is unclear to the Court why these texts are relevant, and that they are highly prejudicial, the Court finds that they violate Rule 403 and Rule 404(b). Therefore, they are inadmissible.

### (6) Messages 339–345, 348–357, 3799, 3806, and 3809:

These messages consist of a variety of innocuous messages from multiple senders, such as the following: "Are you up"; "U just pocket dialed me"; "wyd"; or "call me when u get a min" (DE 86 at 10–12.) The Government argues that these texts are admissible as "direct evidence of the defendant's delivery of controlled substance." (DE 84 at 2.) However, the Court is unsure why these texts are relevant, as they do not reference drugs nor do they appear to contain any coded words for drugs. Accordingly, the Court finds that these texts are irrelevant and inadmissible.

### (7) Messages 346–347, 18–21, 32, 38, 40–42, 50–52:

In text number 347 and text number 348, on November 1, 2019, a customer named "Jeff" asks Bridges if he has got "in new stuff . . . ." Bridges responds that he has that "first Brown I gave u." (DE 86 at 11.) Then, on November 7, 2019, in text number 18 and text number 19, the same customer, Jeff, asks Bridges "U got another one for 40," to which Bridges replies with "yea." (DE 86 at 14.) As long as the Government has an expert testify that "brown" is slang for a controlled substance, the Court finds that these texts do not run afoul of Rule 403 or Rule 404(b). As the Court explained earlier, other drug transactions on the same day as the charged offense are relevant to prove the defendant's intent to distribute, motive to possess a gun, and opportunity to make the controlled sale on November 1, 2019. *See supra* pp. 2–5. Furthermore, the second set of texts from "Jeff" indicate that Bridges was dealing drugs just one day prior to when Bridges is charged with possessing controlled substances with intent to distribute in Count 4. The Seventh Circuit has been clear that intent is a permissible non-propensity purpose. *Gomez*,

8

763 F.3d at 858 ("Evidence [which] is offered to prove intent [is] a permissible non-propensity purpose.) *see also Morgan*, 929 F.3d at 428 ("Our Circuit holds that possession with intent to distribute is a specific intent crime.").

The Court notes, however, that the text messages numbered 32, 38, 40–42, and 50–52 appear to be irrelevant and cumulative. In these texts, Jeff and Bridges go back and forth saying "what up" and "what's up man." (DE 86 at 15.) The Court sees no reason that these texts need to be introduced into evidence. Accordingly, given that they appear to be irrelevant and cumulative, the Court finds that they are inadmissible under Rule 401 and Rule 403.

### *(8) Messages 2, 33–37, 39, 43–46*

These texts include multiple statements which Bridges never responded to or adopted in any manner. For example, in text number 2, an individual requests Bridges to front her a "half." (DE 86 at 13.) Another example is an individual texting Bridges "can u get me a ball for 80." (DE 86 at 14.) However, Bridges never replies to either of these texts. While these questions and requests do not constitute hearsay, the Court finds that that they run afoul of Rule 403. *See United States v. Love*, 706 F.3d 832, 840 (7th Cir. 2013) ("[Q]uestions are not statements and therefore are not hearsay."). The probative value of these texts appears limited given that Bridges never responds or adopts those statements in any way. Nor is there any other evidence indicating that any actual drug deals occurred. Furthermore, there is other, more direct evidence of drug dealing during the same time frame as these texts. *See infra* pp. 7–10 (discussing other texts in November, such as the texts with "Jeff," "Rodge," "2 Angie," and "Pop"). Accordingly, the Court finds that any probative value of these texts is substantially outweighed by the risk of unfair prejudice.

### *(9) Messages 12–17, 22, 26–27, 73–89*

These texts appear to be between three drug purchasers and Bridges. In one set of messages (12–17), the other individual, "Rodge," tells Bridges to have "a package ready." (DE 86 at 13.) Bridges then responds with "come on" and "ok." (*Id.*) In another set of messages (22, 26, and 27), "2 Angie" texts Bridges: "Hey are you by chance gonna get some powder today?" Bridges replies: "He on his way wit it." (DE 86 at 14.) Finally, in the last set of texts (73–89) an individual named "Pop" asks Bridges if another individual had received "popcorn" and Bridges responds by saying that he "gave her a whole bag." (DE 86 at 17.) After this, Pop asks if "she ask[ed Bridges] for a blunt for me." (*Id.*) As long as the Government has an expert first testify as to what a "package," "powder," and "popcorn" means (i.e., that it is slang used to describe controlled substances), it is permissible to admit these texts. As described above, other uncharged drug transactions may be relevant to intent, motive, and opportunity. *See supra* pp. 2– 5. The Court also notes that these texts occurred on November 5, 2019, and November 7, 2019, which are within three days of when Bridges is charged with possessing controlled substances with intent to distribute in Count Four. The Seventh Circuit has been clear that intent is a permissible non-propensity purpose. *United States v. Gomez*, 763 F.3d 845, 858 (7th Cir. 2014) ("Evidence [which] is offered to prove intent [is] a permissible non-propensity purpose.) *see also United States v. Morgan*, 929 F.3d 411, 428 (7th Cir. 2019) ("Our Circuit holds that possession with intent to distribute is a specific intent crime."). Accordingly, the Court finds that these texts are admissible under Rule 403 and Rule 404(b).

*(10)   Messages 23–25, 31*

These messages consist of Bridges texting someone named "Bones" certain phone numbers and asking an individual named "Hooty" to call him. (DE 86 at 14.) As the Defendant notes, the texts do not appear to be relevant on their face. The texts do not reference drugs at all

nor does the Government provide an explanation of why these texts are relevant. Accordingly, the Court finds that they are inadmissible as irrelevant.

### (11)   Messages 54–66, 69–72

These texts consist of an unnamed individual texting Bridges asking for "[j]ust a half." (DE 86 at 16.) Bridges responds that he is on his way, however he never shows up. (*Id.*) Given that the texts indicate that the drug deal fell through, and that other texts likely to be admitted at trial indicate that transactions were completed, the Court believes that these texts have minimal probative value and are largely cumulative. *See supra* pp. 7–10 (discussing other texts in November, such as the texts with "Jeff," "Rodge," "2 Angie," and "Pop"). Accordingly, the Court finds that they are inadmissible under Rule 403.

## B.   Conclusion

For the reasons stated above, the Court excludes the texts analyzed above that violated Rule 401, 403, and Rule 404(b). The Court also notes that some texts were not objected to by the Defendant, such as text number 48 and text number 49. The Court does not rule on these texts here, but simply advises the Government that it should consider how, at some point, the texts concerning other drug transactions would be cumulative of one another and impermissible under Rule 403. *See United States v. Boros*, 668 F.3d 901, 909 (7th Cir. 2012) ("Rule 403 permits a district court to 'exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . wasting time or needlessly presenting cumulative evidence'").

SO ORDERED.

ENTERED: October 21, 2022

                /s/ JON E. DEGUILIO
              Chief Judge
              United States District Court